Good afternoon. Illinois Public Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary L. Mixer presiding, case number 22-1352, SAMHSA Rosa Mall, LLC v. Aon Risk Services Central, Inc. Good afternoon, counsel. Welcome to the First District. Before we start, I'd like each of you to please tell us your names and for appellant, tell us if you would like to reserve any of the 20 minutes allotted for rebuttal. Good afternoon, Your Honor. This is Scott Schutte on behalf of the appellant, SRM, Santa Rosa Mall, and I would like to reserve five minutes of the 20 minutes, please. Okay. You may be muted, Mr. Sobel. One would think I'd be better at that at this point. I apologize. Jeff Sobel on behalf of defendant appellee, Aon Risk Services Central, Inc. All right. All right. Mr. Schutte, whenever you are ready, you may proceed. Thank you, Your Honor. Good afternoon, and may it please the court. As I said before, my name is Scott Schutte, and I represent the appellant, Santa Rosa Mall. I will try not to, but I may refer to my client as SRM at some point, but I hope that will be okay. That's fine. However you plan to refer to him is fine. Thank you, Your Honor. This dispute arises out of damages caused by Hurricane Maria to a shopping center property owned by Santa Rosa Mall in Puerto Rico back in September of 2017. Santa Rosa Mall has alleged, and at this pleading stage defendant appellee, Aon, does not dispute that the hurricane caused more than $20 million in property damage to the SRM property. If this case were to proceed, we would expect that we would be able to present proof that the damages occurred to date almost reached $50 million based on lost rent and other issues that have arisen out of the failure to have the claim paid. The issue before this court today is whether Santa Rosa Mall has stated a claim for either professional negligence, which is count two, or tortious when granting Aon's motion to dismiss pursuant to section 615. Go over this in some detail, but Santa Rosa Mall has alleged that it was an additional insured under the insurance policy that Aon negotiated and wrote on behalf of Sears, and that allegation is hooked to specific provisions in both the lease and the insurance policy. As such, Aon had a duty to act in best interest of Santa Rosa Mall. I'm going to stop you, counsel, because I, and I'll admit, I'm very confused, and I may be missing something that you and your opponent and Judge Otto all saw. But what does it matter whether you're an additional insured or a lost payee when you're talking about the broker as opposed to the insurance company? I understand why it may matter when the defendant was the insurance company. Why does it matter here? Your Honor, I would submit that it does not matter as to the tortious interference claim. I believe that it's Aon's position that it matters on the professional negligence claim because the duty that gives rise to a professional negligence obligation is a duty that would have, that would be owed to an additional insured, but they would say not to a lost payee only. But why would any, why would that duty be owed by a broker? I understand why that duty might be owed by an insurance company, but why would that duty be owed by the broker? Well, the broker, and I don't believe Aon has disputed that they, if there is a, if, excuse me, if Santa Rosa Mall is an additional insured under the policy, that they owe a duty to Santa Rosa Mall to treat it on equal footing with Sears, the other named insured. And I don't know if that's what Your Honor is asking. But it's what I'm saying. If I'm the insurance company, I owe the same duty to an additional insured that I owe to the named insured. I get that. And we can argue about whether that's equally true of a lost payee, but I'm the broker. I am the broker for Sears. Why would I owe any duty to an additional insured on a Sears policy when I am not the insurer? Well, Your Honor, we've cited, I think we've cited cases for that proposition and it wasn't really disputed in front of the circuit court. But the principle is that every insured, whether a named insured, the initial insured, an additional insured, has a right to the proceeds of the policy and to be treated by the broker as equal under the eyes of the law, equal under the facts as every other insured. And so if the broker, I mean, you know, for example, you know, admittedly not in Illinois, but there's a case that both sides have cited the Cleveland Indians case where in that one, the broker was supposed to place a policy and did not. There was no problem finding that the additional insured, the Cleveland Indians baseball team, was owed a duty by the broker. So there's nothing in the law that says that. That was because they were foreseeable, not because they were... I will go to your opposing counsel because I might guess he doesn't see this, but I'll ask him. I'm asking you, and I understand the Cleveland Indians case, but that's different because that was negligence by the broker, which hurt a foreseeable third party, not because that third party was an additional insured, but because they were completely foreseeable. I think, as I understand, and I used to do a fair amount of insurance, the way an additional insured is protected is because they have a contract with the insurance company. There's no contract between you and Ann. You're not... So I'll drop it. And if you have additional cases other than the Cleveland Indian cases, which I think really goes to foreseeability rather than additional insured, I invite you to submit them post-argument, but do it within a couple of days, because I believe all the cases you cite have to do with the rights of an additional insured vis-a-vis an insurer as opposed to vis-a-vis a broker. So I'm telling you that is a problem for me because I don't get it. Your Honor, I will certainly take that up, and I will say that the briefing and the argument, that was never an issue that was considered by... I know Your Honor said that neither the circuit court nor the parties raised it, which is true, but it is the case. We believe it's the case that if every insured who a broker has an obligation to place insurance for, and under our reading of the lease, that includes us, Santa Rosa Mall, every insured who the broker has an obligation to place insurance for is owed a professional duty by that broker. That doesn't matter if it's the person here, Sears, who retained the broker or Santa Rosa Mall, who under our reading of the lease was entitled to have AON place coverage on its behalf. Okay. I understand your position. And again, if there's any cases that say that, I'm interested in seeing them. Okay. Thank you, Your Honor. And if there are such cases that we'd like to submit, we will do it post-haste. So the standard of review is really not disputed here on the Section 2615 issues. It is de novo. The, I feel a bit guilty for even saying this to the court, because I know you know it, I know Mr. Sobel knows it, but I want to say it because it's so important here. At the 2615 stage, the court must accept as true all well pleaded facts, as well as reasonable inferences. They must be construed in light most favorable to the plaintiff. And there should not be a dismissal unless there's no set of facts, no set of facts under which the plaintiff can be entitled to recover. Your Honor, I would go through the factual background rather quickly. It's laid out in the briefs, and I'll hit the high points here. So Santa Rosa Mall owns this property in Puerto Rico where Sears entered into a lease to have a store. The two provisions of the lease that are most important, I think, on this appeal are the provision that required Sears to quote maintain at Sears sole cost and expense for the benefit of SRM and Sears insurance with respect to the demise premises for loss due to the windstorm. There is a also a provision that would become important if the case proceeds, and it is important, we think, as factual background to both of our claims that Sears was obligated under the any insurance recovery exceeding $100,000 for windstorm losses. Your Honor, AON's role in this case dates back to 2011 where AON has provided risk management services to Sears. Those include interpreting policy forms, and again this is a quote from the statement of work, reviewing insurance wording in leases and recommending risk mitigation and other recommendations as needed. We have alleged that at all relevant times Sears was aware of these lease obligations, and it is not disputed at this point that AON drafted and negotiated the policy for the 2017-2018 policy that's at issue. It's in the record, but I want to point out that this is not a case where AON went out and procured an AIG policy or AI went out and provided the Lloyd's of London policy. This is a policy that AON negotiated, procured, and wrote on its own paper in this instance, so it's a little different than some cases that this panel may have encountered in other circumstances. But AON is not the insurer, correct? They are the broker, but they drafted the policy. These are special policies. Right, right. They had an obligation, yes your honor, they had an obligation under the lease to understand the lease requirements to go out and get that insurance. They negotiated that insurance and they drafted the policies. And they procured and insured to be the signatory on the policy. Yes your honor, and that will be important as we go forward because the fact that we're here at large part about the interpretation of policy language matters because the policy language we believe should clearly be read to convey additional insured status on Santa Rosa Mall. But to the extent that there's any question about that, the person who drafted the policy and understands it is the defendant AON. Hurricane Maria occurred in September 2017 and shortly after that, I believe in October 2017, we've alleged AON took on additional duties that are really important here and set this case apart from many others. They took on duties to help with claim preparation services and providing necessary support to Sears with respect to the adjustment of claims. The reason we're all here is because of a decision that Sears and we have October 2017 when Sears said as the lease requires that it would put the insurance proceeds due and owing to Santa Rosa Mall into a segregated account. And then in June 2018, Sears reversed course and said it was not required to keep the money in a separate account. And then October 15, 2018, there's a bankruptcy. Then Sears and we have alleged with AON as Sears consultant negotiated a settlement of all Hurricane Maria claims for approximately $60 million, all of which went into the bankruptcy estate because it was not in a segregated account and none went to Santa Rosa Mall. We don't know the extent of AON's work during the October 2017 to June 2018 time period because we haven't had the benefit of discovery. But what we do know is that between July and September of 2018, AON spent 390 hours on Sears Hurricane Maria work. I'm going to borrow a phrase from the musical Hamilton if any of you have all seen it. There can be no question under our allegations that AON was in the room where it happened. They were in the room on the front end. They were in the room on the back end. This is not a broker who places a policy and goes away. This is a broker who places a policy and then helped and was a consultant in the claims. Mr. Sobel made a statement during the argument in August and it was a fairly conciliatory statement. I don't think anybody disagrees that Santa Rosa Mall was wronged here. The only question is, can we go after AON? I'd agree with you that that's the question. Yes, Your Honor. That you were very wrong. Your Honor, AON makes a point in pointing out- Cindy, just a second. You mentioned about all the hours that AON spent on the relief after what was AON paid for all those additional hours? Yes, Your Honor. That's why we know that because they went to the bankruptcy court and petitioned to be paid because it was the 90 days before the bankruptcy. That's the issue. And so this is where you get to the argument of AON having been a part of this scheme to the proceeds and the benefit to them was that Sears was in a position to be able to pay them through the bankruptcy. Yes, Your Honor. And also that there was a longtime relationship between Sears and AON and there was a one-off relationship between AON and Santa Rosa Mall. So I think that we've alleged is that there was a period of time where Sears and AON were working hand in glove on claims issues. And it was during that period of time that the decision was made not to segregate the money, but instead to go off and negotiate a settlement that went only to the bankruptcy estate with nothing going to SRM. So counsel, can you just make it plain for me what distinguishes a concocted scheme? Because you say they concocted a scheme versus consultation or advice that didn't work to your benefit, but instead worked for the benefit of their direct client being Sears. Your Honor, the first point I would make in response to that. And let me just add this because otherwise it looks like just an unsupported allegation with no meat to it. Your Honor, I would respectfully beg to differ on that because what we have alleged is that AON knew about the lease requirements. They placed, they drafted and negotiated the policy. They were paid and were participating in handling of the claims, including at the period of time where the reversal was made that allowed the to go into the bankruptcy estate and not to Santa Rosa Mall. So I don't think it's concocted. I think there's a factual basis at the section 2615 stage. That's a plausible interpretation of the facts before the court. I would also, Your Honor, point out that, again, at least from our perspective, and I realize Justice Mikva has asked this question, there is no duty difference between what AON, once we are, if we are right that we've alleged that we are an additional insured, our position is there's no difference in the duty owed to Santa Rosa Mall as owed to AON. We're on equal footing. And if during the course of that claim adjustment, again, where they spent 390 hours and were part of the resolution, we have alleged it with a good faith at this point, if they allowed Sears and favored Sears against the interest of Santa Rosa Mall, we believe that would be a breach of the professional duty. Your Honor, I see that my 15 minutes has passed. There are questions and we will not hold them against you, but I will certainly let Justice Walker ask this question. And also, I took a lot of your time, so I'll let you finish up also. So go ahead, Justice Walker. Thank you, Justice Mikva. And just reconcile this for us, because you're constantly arguing that they were an additional insured. And Mr. Sobel is constantly arguing that they were just a lost payee. Help us with that. Why are you arguing two different things? And why do you think he's arguing what he's arguing? Tell us why you're arguing what you're arguing. I think he's arguing what he's arguing. And I'm sure Mr. Sobel will tell us what he is arguing exactly. But I think he's arguing what he's arguing because he recognizes that if we are an additional insured, Aon owed us a duty. That's the issue. One of the things that's interesting is the term lost payee has taken on a life of its own here. That term does not appear in the lease. It's not in the lease. It's a term that the circuit court decided to call what we were. But one thing that I argued in front of the circuit court that I want to make very clear to this court as well, you can be both a lost payee and an additional insured. All a lost payee does, it says who gets the check written to them. My wife and I could share a homeowner's policy, but we could somehow negotiate with the insurance company that says if there's a loss, the check comes to Scott, not to Victoria. Right. And I think that that that so this idea of that there's a lost payable provision in the lease does not put it does not confer status. But Justice Walker, to go back to your question, I think that the reason we're fighting about this is because it is the threshold question of whether there's a professional duty. So prior to the hurricane, what was the extent of your client's contact or interaction with Aon? I believe the extent of the interaction was to the extent that we requested information about the policies or confirmation of coverage or certificate of insurance. That was it. I don't believe there was extensive interaction prior to the hurricane. So you were not involved in any negotiations or consultations between Aon and Sears prior to that? That's right, Your Honor, because our interest at that point was to ensure that and this is backed up with allegations in the complaint that we thought that the lease requirement of us being an additional insured had been fulfilled. That's what we cared about, is that if something bad happened, we would have the opportunity to make a claim in our own best interest. But I don't think to go back. But if you felt that Aon owed you a duty, then why wouldn't you have been included in those discussions? Well, because there was no, there was really no need, because if the, I guess, mixed metaphor, actually it's an apt metaphor because we're talking about a hurricane. If the sun is shining, there's no need for us to go out and confirm what we thought was the obvious. The policy has been placed, we had proof that the policies had been placed, and we considered ourselves to be an additional insured. That's what we wanted. And so there was no need for us to interact with Aon or the insurance companies because the lease requirements that Sears procure insurance for our benefit had been satisfied to our mind up until the point, and actually after the claim. After the claim, when they said that they were going to segregate the funds, there was no reason for us to get deeply involved in this. It was only after that period of time where Aon was acting as a consultant, and the world changed, and the money, instead of coming to us or to a segregated account, safe from bankruptcy, flowed into the bankruptcy court to pay the lawyers and the consultants. I have one more question. Again, none of this is going to come out of your rebuttal comments, so rest assured. This goes back to the tortious interference claim. And I know that this got dropped on appeal and is not being pursued, but my question is, assuming that we could liberally construe the complaint enough to find that there was tortuous interference because Aon's consultation amounted to encouragement or inciting Sears to breach the lease, why doesn't it run right into the privilege that Aon would have as a consultant, as a professional consultant, to give advice on how to best resolve this terrible situation Sears found herself in? I mean, there is a privilege, and it was alleged at one point, and then the court said, well, there's a question of that. But it seems to me that anything that could possibly amount to Aon's active participation might run right up against that privilege. That's where that privilege runs headlong into our allegation that we're an additional insured, owed a duty equal to Sears. And that's really the crux of this case. The circuit court found that Aon did not owe a duty to us. And so, I mean, I'm going to put it crassly, but basically Aon could work with Sears to do whatever was in Sears' best interest and SRM's interest be damned, that there was no obligation. Our position, and I know your has asked a question about it, is that we are an additional insured. We have alleged that. And as an additional insured, we're an owed duty and must be traded equal. It's not a perfect analogy, but there could be a law firm analogy. I cannot, I mean, there's a conflict issue that a broker doesn't have, but I cannot treat one client and disfavor another. That's not allowed. And so what we believe happened here is Aon favored one additional, one named insured, and disfavored the additional insured. And I think that's where the privilege issue wraps up. Okay. Well then again, I encourage you post-argument, and I'm going to give you until the middle of next weekend or longer to get us any cases that suggest that this matters vis-a-vis a broker, as opposed to vis-a-vis an insurance company. We will do that. We appreciate the opportunity, Your Honor. And I will reserve my five minutes for rebuttal. Thank you very much. Counsel. Please, the court. I think the hardest job a lawyer has is going second in oral argument, to keep quiet. So I'm going to try and answer some questions, and I'm going to correct some misstatements of fact that counsel made. First, the reason the additional insured issue has been so prominent is because Santa Rosa Mall has staked their duty claim on being an additional insured. The issue of whether as an additional insured Aon would owe this duty that they're arguing, that actually wasn't reached by the circuit court. And so that issue was never addressed at the lower court, and it's not addressed in the briefing here. But I need to correct a couple things that counsel just said. And I think he said the loss payee issue has taken on a life of its own, and he didn't know why. And I'm going to tell the court why the loss payee issue has taken on a life of its own. First, in the supplemental appendix on page 30 of the supplemental appendix, you will find section 6.02A of the lease itself. That section says, quote, such policies shall contain loss payable clauses to landlord and tenant as here and below provided in section 6.03. So loss payee and loss payable is actually what the lease requires. And you don't have to believe me, because on appendix page 30 in paragraph 8 of the original complaint filed in his case, Santa Rosa Mall alleged, quote, the lease required Sears to name Santa Rosa Mall as a, quote, loss payee in any property damage policy. Once again, in the amended complaint on page 111 of the appendix, Santa Rosa Mall pled in paragraph 10, the lease required Sears to name Santa Rosa Mall as a loss payee in any property damage policy. And then lastly, here before this court, on page 2 of Santa Rosa Mall's opening brief, you'll find a bullet point that says the lease required Sears to name Santa Rosa Mall as a loss payee in a property policy. So I think it's safe to say that loss payee has taken on a life of its own because it is alleged in every operative filing from Santa Rosa Mall. Well, I might suggest to you that this distinction that Justice Walker asked opposing counsel about, this distinction you both are drawing between a loss payee and additional insured, I'm not sure why it matters. Certainly not in this instance, but in any instance, because a loss payee is entitled to certain rights. And some of the cases that for example, the cases versus Ohio Casualty Insurance Company, if something's for the mutual benefit of somebody, they're entitled to rights. But again, I question whether they're entitled to rights from the broker, as opposed to the insurer, but both loss payees and additional insurance have rights. And which one you are, which one the mall was, I'm just not sure why it just, I mean, there's no question that under the lease, SRM had certain rights. And, and, you know, I just don't know why it matters what their label is. Your Honor, I agree with you. Right. And the question is, who owed them those rights? And the answer is obviously Sears, the party to the lease. And Sears, who's the named insured under the policy. And remember the policy on paragraph 53 of the policy required the insurance carriers to make any and all payments directly to Sears. And then it was Sears obligation to pay that money out as Sears saw fit. So you heard counsel talk quite a bit, and he actually said, the reason we're here is because a decision that Sears made. Right. And I know everyone knows this, but I'll say it for the record. I don't represent Sears. I don't even represent the insurance carriers. And, and I also want to be clear for the record. It's not one insurance company. It's a consortium of insurance carriers because this was not one property policy underwritten to cover this property. This was the worldwide property insurance policy for Sears covering every Sears and Kmart store in the world. I believe the record says it's over 4,000 of them. And the settlement that happened in the bankruptcy court was for more than just this hurricane. It was for multiple hurricanes and other losses between Sears, who was represented in the bankruptcy court by Weil Gottschall and Paul Weiss. They both filed appearances for Sears and the consortium of approximately 20 insurance companies who were represented by Clausen Miller, my original employer as a lawyer, I might add. And all of that, of course, was approved by the bankruptcy court. Right. So because they're all in bankruptcy. So the idea that there could be some duty that Aon in the midst of all that, that Aon not only would have a duty, but importantly, as Judge Otto noted, that even if Aon had a duty, that they somehow caused this injury to Santa Rosa Mall is not based on facts. It's not based on reasonable inferences from any plot facts. It's based on fantasy. It is based on the idea that Aon could. Mr. Sobel, you don't have to go into the details, but there's some facts. They've alleged that Aon was basically advising Sears during this period of time and billed them for this period of time and subsequently collected in the bankruptcy during this period of time. So in that their motive was to make sure that they were paid for the work that they were doing and that the money would be in the bankruptcy estate. Sears, excuse me, Aon gets paid at the approval of the bankruptcy court, not Sears. And there's no evidence that any of the funds collected in this settlement with the insurers inured to the benefit of Aon. Of course, we know that it's paid at the discretion of bankruptcy court, but the money is there. If the money is not there, nothing can be paid. You can only be paid what the estate actually has. There are no facts. I'm sorry. I'm sorry, Your Honor. I thought that's what they're alleging. That's what they're alleging. They're alleging that this relationship was going on attuned to a marriage between Aon and Sears and that they were basically, at some point, almost one in the same when it came to the money. That's what they're alleging. So, and I'm not saying they're right about it, but I'll let you respond to that because I still want to come back to this lost payee thing, even though I agree with Justice McAvoy. I'm not sure how it matters as to your client, Aon, but I want to come back to that for a second. So, go ahead. I'll let you answer this question first. Sure. So, it's actually not pled in the amended complaint or the original complaint that Aon financially benefited from this settlement between the insurers and Sears. It is only alleged, as Justice McAvoy noted, that Aon was the between Sears and Aon. There is, there's nothing more than that. In fact, under these facts, under these, I'm sorry. Yeah, because you mentioned the complaint. I thought it was dismissed with prejudice though, correct? Am I correct about that? They weren't allowed to re-plead. Is that correct? They re-pled the tortious interference claim. There was an amended complaint on the tortious interference claim and the amended complaint did not plead that Aon directly benefited from any money out of this settlement with the insurance carriers or any of the money that was not paid to Santa Rosa Mall. And then that complaint was also dismissed without an opportunity to re-plead. Is that correct? I don't believe there was a request to re-plead the first amendment complaint. I don't think there was one put in their briefing or an oral argument from the transfer. I'm talking about the tortious interference part of the second amendment complaint or the amended complaint that included the tortious interference. That was also dismissed with prejudice, correct? Yes, without request to re-plead. But the amended complaint did, following up on what Justice Walker's asking, it did say that it did have this proof that during this period, following the hurricane, there were all these additional work done by Aon in helping Sears navigate these claims. And it was during this period of additional work that Sears did this sudden new understanding of what the lease provided, correct? That is alleged. It is alleged, although Sears, as Judge Otto noted, the allegation of what Sears did predates that work by Aon in the bankruptcy. So the timeline is not quite... Perfectly. We don't know exactly, I don't think from the complaint, exactly when Aon started working with Sears on these negotiations, do we? We don't. There's not even a specific allegation that Sears, or excuse me, that Aon led the negotiations with the insurance carriers because, of course, during the time that Sears was negotiating with the insurance carriers, they were represented by Paul Weiss and Weill Gottschall. And the insurance carriers, the consortium of 20-odd, were represented by Klaus and Miller. Right. But Mr. Schutte alleged, at least in his brief though, that this was a scheme or a plan that had been going on for a long time and that Sears had been preparing for this bankruptcy thing. It's just that the public didn't, no one knew about it. They alleged that Sears had a conclusion that Aon was a part of that, yes. Although there was never a conspiracy claim, which would make much more sense given those allegations. Right. But he's also arguing that they had no opportunity to engage in any discovery. And if they engage them in some discovery, they'll be able to show you how Aon was involved in this scheme as they pull it. Actually, I think what he said is that if they're allowed discovery, they hope to find evidence that may support their suspicions. Because it's not the kind of situation where, as with a lot of the cases they cite, it's company A hiring employees away from company B and company A has actual control over the employees. And there may be internal communications related to that. It's a different situation. And as Judge Otto correctly noted, this, when we talk about all of this, the allegation requires that Aon could stop Sears from doing what it did, right? That Aon induced Sears with the intent to, with Aon having the intent to harm Santa Rosa Mall, that Aon actively induced Sears to take all the money from the company and not put it in a separate account as the lease required. All because Aon, for some reason, I guess, had it out for Santa Rosa Mall. I mean, it makes no sense whatsoever. There's no reason Aon would care. Aon's client had been Sears for a decade, right? So, there's a longstanding commercial relationship there, which feeds right into the privileges Justice McFinn noted. And I will say, if this court were to extend, under these facts, the idea that this claim could be pled, every service provider to any company where that company makes a decision that interferes with another company, every service provider is now liable to be sued, right? Paul Weiss, they were counsel to Sears. They certainly had much more active role in negotiating the settlement agreement with the carriers and obtaining bankruptcy court approval than Aon ever did. Same with Weill-Gottschall. Any consultants, any auditors who come in and consult, any accountants who provide financial, anybody who can be seen being hired as a service provider when a company like Sears, which obviously had reams and reams of consultants providing all when Sears makes a decision that negatively impacts a company like Santa Rosa Mall, those service providers, all you need to plead, all you have to plead is that Sears breached an agreement. The service provider was in the room, as counsel said. And since they're in the room, I want discovery of whether they induced with the intent to harm Santa Rosa Mall. Well, you're not going to scare us, but you might be giving opposing counsel some new ideas. I don't mean to, I really don't say to scare you, your honor. I think it is important to consider the logical conclusions of the legal pronouncements that Santa Rosa Mall is asking this court to adopt, which have never been adopted in Illinois. I mean, this is clearly new law in and we've discussed all the cases in brief and I can answer about any specific one, but there is no case in a similar situation, finding a claim either for tortious interference or finding that Aon owed a duty. And that duty, mind you, would not, if the court held that Aon had a duty that extended to Santa Rosa Mall, you would also be holding that Aon had a duty that extended to the other 4,000 property owners at which Sears and Kmart had properties. But this is different because Sears appeared to plan to acquiesce with making the deposit initially. And then there was a flip flop. Then they changed their mind. So don't they have a wire as to, okay, what made you change your mind other than your relationship with your consultant, this specific consultant? They could ask Sears. I mean, they did. They had a lengthy list of letters between them and Sears, which by the way, Aon's not copied on any of them. They had a lengthy list of correspondence between Santa Rosa Mall and the insurance carriers, which we are not copied on. And to remind the court, they did pursue Sears and they lost. They pursued the insurance carriers and they lost. And then and only then did they come after Aon. So are they entitled to that from Sears? Yes. And as counsel said, even when he was arguing, and as we point on their briefs, Santa Rosa Mall's case is premised on Sears did this, Sears did that, Sears did this, the carriers did that. Aon was the broker. We want to sue Aon. I mean, that's it. There are no, as Judge Otto said, there are no reasonable inferences to get from there to tortious interference and no legal basis for finding a duty. Any other questions? Justice Johnson, you were about to ask a question because you are out of counsel. All right. If you want to briefly conclude. I think I would briefly conclude only with even if there is a duty, again, we agree with Judge Otto who asked, what exactly was that duty supposed to be when Sears reaches agreement with the Consortium of Insurers under the protection of bankruptcy court? What supposed power does Aon have to do anything? Because there has to be causation as Judge Otto noted. What power does Aon supposedly have against those law firms, the bankruptcy court, Sears and the insurers with a policy that requires payment go directly to Sears? And the answer is none. Thank you. Thank you, Your Honor. Let me first address this public policy doom and gloom theory. There's a reason why SRM cannot sue Paul Weiss, which is there was no relationship between SRM and Paul Weiss. If Paul Weiss had represented SRM and owed a duty, whether as a loss payee or as an additional assured, you can bet your bottom dollar that SRM, who's been saddled with a $50 million loss, which may not be of consequence to a Fortune 500 company, but it's a big deal here. Yeah, we would have sued him. But the difference that makes this, this is not a slippery slope to and the difference being is that they were in, Aon was in the room at the front end and they were in the room at the back end. What could Aon have done? Aon could have said to SRM, as an additional insurer or loss payee, Aon could have said, you can't do this. This money, we read the lease, we wrote the policy, we negotiated the policy, we placed it. This is not right. Okay. So there is, there is things that they could have done. They could have notified us. They could have required Sears to notify us. There's no allegation. That's what they did. The allegation is, as Justice Walker is, is that there is a very uncanny sequence of events, close in proximity and order. We'll segregate the money. We hire the claims consultant. We pay the claims consultant. We change our tune. We file for bankruptcy state, not to you. From those facts, we believe that we have, we have sufficiently pled facts, both on tortious interference and on professional negligence. I do want to address the issue. I don't recall, did you file a claim with the bankruptcy? I believe there was a claim filed with the bankruptcy, although I'm actually, I'm sorry, Justice Johnson, I don't know that off the top of my head. Was it, I mean, you could stand to recover from leftover, from the proceeds of the bankruptcy. Your Honor, I can try to track that down quickly. I'm not sure the answer. I know that we did, as Mr. Sobel acknowledged, we went after Sears. We went after the insurers. We've been stopped at every turn. And I don't, you know, I don't, they, they, they paint that in their thing. Well, of course we've, we're out tens of millions of dollars and Sears is not, Sears is in bankruptcy and the bankruptcy estate has been approved and the organization has gone forward. We have filed another claim against the insurers, which Sears and the insurers are trying to say we can't bring, because if we cover against the insurers, the settlement agreement negotiated while A.M. was a claims consultant makes Sears the indemnitor of the insurers if somebody comes after them. So we're kind of, we're put into a box, a box that was created during a time. We don't know what happened, what happened in the room. That's what we want is the discovery, but we have alleged facts that should get us in there to let us look. I do want to address the issue that Mr. Sobel raised about the fact that the words lost payee appear in our complaint, in our brief. I want to, two points about that. One is, because you're a lost payee, that doesn't mean you're not an additional insurer. Those are two separate things. It's, again, it's not lost payee, it's lost payable. Who's the money go to? Who's the check get written to? And here, it's both important that we are an additional insurer, because notwithstanding your questions, Justice Mishko, we believe that that gives rise to a duty. But secondarily, the lost payable point, where the money is supposed to go, is at the center of this entire scheme, as Justice Walker pointed out. We wouldn't be here had they not reversed the decision to take the money out of segregated account and fold it into the bankruptcy estate. So we're not, by saying that, by raising the lost payee issue, we're not conceding somehow that we're also not an additional insured. We're mainly only pointing out that under the terms of the lease, the money should have come directly to us. That's a second point. And I guess the third point I would make, and perhaps the last point, unless your honors have a question, is that I understand that there is a requirement under a tortious interference claim for intentional inducement. We think we pled facts for that. But this came up in the hearing in August in front of the circuit court. Mr. Sobel has raised it again today. It doesn't matter whether Aon had an incentive. Aon doesn't, they need an intent, not an incentive. This is not a, so, you know, if they had an incentive that perhaps makes our case better, it's a better story, but incentive is not important. Intent is important. They could have no incentive of all. They could just decide that they don't like Santa Rosa Mall. And so I think that we're off course a bit if we're talking about what, when Mr. Sobel says, well, what intent, what incentive does Aon have to do this? It doesn't really matter. They owed a duty, whether they, and even if they didn't owe a duty, they knew of the existence of the lease. And then we have alleged that they took steps to interfere with the obligation under the lease, citing the language that Mr. Sobel pointed out to you that we were, we should have received the money under a loss payable clause. So unless your honors have question, I really appreciate your time and attention. And we would ask that you reverse the decision of the circuit court and allow this case to proceed in discovery. All right. I'm going to take a, thank you, counsel. I'm going to take a prerogative as presiding judge and either of my other panel members, please chime in. But I would request that each of you file anything you want to, and you don't have to file anything and file it before next Wednesday, the end of the day, the 14th. Do not ruin anybody's weekend. No associates weekends are to be ruined. That's part of the court order. To address two things, one, and it should not by a broker to an additional insured and justice Johnson's question to the extent either of you have information. And if you can cite a page in the record, great about what happened in bankruptcy, pursuing any of these claims in bankruptcy against you. So you can use that three pages, however you want, again, may not ruin anybody's weekend and you don't need to file anything, but we will look for something from both of you by the end of the day on the 14th. And either of the other members of the council want anything else answered or address? No, thank you. Your honor, may I ask one question for clarification? I think this, I would just want to make sure I understood the second question. I think it was what happened to Santa Rosa's mall, Santa Rosa malls claim in the bankruptcy proceeding. Right. I think justice Johnson, that was your question. Is that fair? Yeah. So the question was whether they made a claim, Santa Rosa mall made a claim in the bankruptcy proceedings. And then you can give us the status of that claim. If there was any order answered regarding them. And my only related question, justice McFarland, I heard you mention the record, obviously the bankruptcy materials are public record in the docket because we can take judicial notice of those. So that that's fine. Any, any other questions? No. Thank you both. There's really, it's really so well briefed and so well argued on both sides. And thank you both. And we will hear from us shortly after we hear